UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NANCY A. TULLIE,          :
    Plaintiff,          :
               :
      v.          :
               :          C.A. No.
THE PRUDENTIAL INSURANCE          :
COMPANY OF AMERICA, and AUTOMATIC          :
DATA PROCESSING,INC. LONG TERM          :
DISABILITY PLAN,          :
    Defendants          :

## **COMPLAINT**

### I. **Introduction**

This is an ERISA claim to recover long term disability insurance benefits ("LTD benefits")

against Defendants who paid Plaintiff, Nancy A. Tullie, long term insurance benefits for over seven

(7) months and then suddenly stopped paying on the basis that she did not meet the definition of

"disability" as defined in the Plan.

### II. **Parties**

1.      Plaintiff Nancy A. Tullie is a resident of Seekonk, Massachusetts.  Ms. Tullie is a

former employee of Automated Data Processing located in Warwick, Rhode Island.

2.      Defendant Prudential Insurance Company of America ("Prudential") is an

insurance company existing under the laws of the State of New Jersey, having a principal place

of business at 751 Broad Street, Newark, New Jersey and doing business in the State of Rhode

Island as an authorized foreign insurer, and insures and administers claims for the Plan.

3.      Defendant Automatic Data Processing, Inc. Long Term Disability Plan ("the

Plan") is an ERISA welfare-benefit plan of which Automatic Data Processing ("ADP") is the

ERISA plan sponsor and ERISA plan administrator having a usual place of business at 300 Jefferson Boulevard, Warwick, Rhode Island.

### III. Jurisdiction and Venue

4.      This Court has jurisdiction over the Plaintiff's claims pursuant to 29 U.S.C. §1132.

5.      This Court has jurisdiction based upon diversity of citizenship of the parties and that more than $75,000 is in dispute.

6.      Venue is proper before this Court, because Prudential is engaged in the business of insurance in the State of Rhode Island and the Plan is located in this State.

### IV. Allegations Common to All Causes of Action

7.      At all times relevant hereto, Ms. Nancy Tullie was a beneficiary and participant under the Plan provided by Automatic Data Processing, Inc. ("ADP") that was fully insured and administered by Prudential.

8.      The Plan is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1002(1) and may be sued under ERISA as an entity, pursuant to 29 U.S.C. §1132(d)(1).

9.      The Plan is funded by insurance provided by Prudential.

10.     Prudential is liable for payment of benefits under the Plan.

11.     The Plan did not, by its terms, reserve or delegate discretion for or to Prudential.

12.     At all relevant times herein, Ms. Tullie was a "participant" in the Plan, as defined by ERISA, 29 U.S.C. §1002(7).

13.     At all times relevant herein, and since the date that Ms. Tullie first sought long term disability ("LTD") benefits, she has been totally disabled as defined under the terms of the Plan.

14.     Ms. Tullie left her position as an Amendment Center Manager at ADP on November 20, 2013, due to a host of seriously impairing physical and mental conditions.

2

15.     Ms. Tullie is disabled from engaging in gainful employment because she suffers from severe and chronic forms of fibromyalgia, chronic fatigue syndrome, migraines and other medical conditions, causing severe and chronic pain, depression, and limiting her mobility and cognition.

16.     Ms. Tullie suffers from constant pain that severely limits and restricts her ability to move, including severe hand, body and joint pain and that markedly impairs her ability to be gainfully employed in any occupation.

17.     Due to the severe and constant pain, Ms. Tullie's ability to process information and engage in problem solving is impaired.

18.     At all times, Ms. Tullie has been under the continuous care of medical doctors.

19.     Her treating doctors and other health care providers have repeatedly determined that Ms. Tullie is unable to engage in any gainful employment.

20.     Despite being under the continuous care of medical doctors, Ms. Tullie has been unable to return to her prior occupation.

21.     In accordance with the terms of the Plan, Prudential required Ms. Tullie to apply for benefits under the Social Security Act.

22.     In conformity with the Plan, Ms. Tullie applied for benefits under the Social Security Act.

23.     Ms. Tullie has been receiving benefits under the Social Security Act ("SSA") disability insurance program.

24.     Under the SSA, the term "disabled" means a person is incapable of engaging in "any substantial gainful activity" [42 U.S.C. §423(d)(1)(A)], i.e. the person is entirely precluded from working on an regular basis.

25.     A person must overcome an arduous burden in order to prove an inability to engage in "any substantial gainful activity."

26.     Ms. Tullie applied for LTD benefits through Prudential arising under the Plan.

27.     Prudential paid LTD benefits to Ms. Tullie from May 19, 2014 to December 31, 2014.

28.     Prudential terminated Ms. Tullie's LTD benefits on January 1, 2015.

29.     When Prudential terminated LTD benefits, it had not required Ms. Tullie to undergo a medical examination.

30.     Prudential has refused to pay and continues to refuse to pay on-going LTD benefits to Ms. Tullie.

31.     Prudential is aware that the Social Security Administration awarded benefits to Ms. Tullie.

32.     In denying benefits, Prudential relied exclusively on medical opinions of persons who never examined Ms. Tullie.

33.     Prudential rendered an adverse benefit decision on January 23, 2015.

34.     Ms. Tullie appealed the adverse benefit decision of Prudential, by sending a notice of the appeal on March 17, 2015 and submitting supporting documentation.

35.     Ms. Tullie fulfilled all of the requirements for obtaining benefits under the Plan yet Prudential refused to pay on-going benefits to her and continues to refuse to pay benefits.

36.     The duties of an Amendment Center Manager are to manage a nation-wide service team and be responsible for complex escalated cases and issues as well as training and mentoring Amendment Specialists and interacting with Senior management on a regular basis.   The main functions of an Amendment Center Manager are outlined in the ADP job description:

37.     Provides continual communication and coordination of functional activities to Service Center/Implementation partners to ensure effective product support.  Determines the departments staffing and training needs to support products and mitigate risk in an ever changing environment.

38.     Manages the daily activities of Amendment Specialists to ensure the proper processing and oversight of preventive and the resolution of complex and escalated services and product issues in a highly effective and ethical manner.

39.     Works with clients. Service Centers, Implementation Centers, Financial Services Center and San Dimas partners to achieve these goals.  Responsible for client resolution at a high level (ex. Controller or CEO).

40.     Uses Major strategic objectives, establishes clearly defined department and individual goals and objectives and communicates these to associates through department meetings and performance planning

41.     Provides leadership that supports the organizations, goals, values and mission through effective and frequent communication/feedback with the team.

42.     Leads the team in adapting to a changing environment through clear expectation setting, and rewards desired behaviors and results.

43.     Responsible for department hiring and terminations as required, as well as the development of bench strength.

44.     Responsible for protecting ADP's assets, including client data in accordance with all policy and procedures.  Responsible for fraud and loss prevention.

45.     Travel as required.

46.     Despite the continued deterioration of Ms. Tullie's condition, Prudential and the Plan unlawfully refused to pay LTD benefits to her.

47.     In doing so, Prudential and the Plan relied on file-reviewing physicians.

48.     Ms. Tullie engaged in a number of pre-suit appeals with Prudential prior to commencing this action, and each time Prudential and the Plan denied her request to reinstate LTD benefits.

49.     Ms. Tullie has exhausted all required appeals under the Plan prior to filing this action.

50.     Prudential has not been granted authority to make discretionary benefit decisions by either the ERISA Plan Sponsor or ERISA Plan Administrator.  To the extent that Prudential contends that it has been granted authority to make discretionary benefit decisions, that authority was self-granted by Prudential alone and is not valid under 29 U.S.C. §1105(c).

51.      At all relevant times herein, Prudential has been operating under a financial conflict of interest as Prudential is liable for benefit payments due to Ms. Tullie.

52.     At all relevant times herein, Ms. Tullie has been "totally disabled" within the meaning of the terms of the Plan, and has been entitled under the Plan to be paid long-term disability benefits, both under the "own occupation" and "any occupation" definitions of the Plan, and she continues to be totally disabled to date.

53.     Every treating health care provider who has examined or treated Ms. Tullie has observed and confirmed the restrictions and limitations that Ms. Tullie suffers from as a result of fibromyalgia and closely related ailments.

54.     Ms. Tullie underwent evaluations and treatment by Stephen J. Petteruti, D.O., who determined that Ms. Tullie suffers from severe, disabling pain accompanied by chronic fatigue; that Ms. Tullie will require lifelong medical care, will always be afflicted with severe pain and fatigue and that she is permanently and totally disabled from any employment.

55.     A tender point test documented that Ms. Tullie suffers from severe fibromyalgia.

56.     Ms. Tullie underwent examinations and treatment by Marianne Longacre, D.O., of Osteopathic Manipulative Medicine who determined after examinations, taking a detailed history and review of symptoms, that Ms. Tullie was an honest and reliable reporter and unable to work as she suffers from severe pain, including hand and joint pain, limping, and chronic fatigue.  Dr. Longacre determined that Ms. Tullie's injuries are 100% disabling and 100% permanent.

57.     Ms. Tullie sought treatment from Karmela K. Chan, M.D., a Rheumatologist who, upon examination, determined that Ms. Tullie has a positive ANA and was positive on 18 out of 18 tender points, and determined that Ms. Tullie suffers from overwhelming fatigue and intense pain in her joints, hands and constant pain around her rib cage.

58.     Ms. Tullie sought treatment from Ajit C. Mirani, M.D. who, after examination and testing, determined that Ms. Tullie has numerous tender points throughout the entitle spine with marked pain.  He determined that Ms. Tullie had 18 out of 18 tender points meeting the criteria for fibromyalgia by the American College of Rheumatology.

59.     Ms. Tullie provided Prudential with substantial evidence from her treatment providers in support of her LTD claim caused by the above-referenced infirmities.

60.     Prudential has not been granted authority to make discretionary benefit decisions by either the ERISA Plan Sponsor or ERISA Plan Administrator.  To the extent that Prudential contends that it has been granted authority to make discretionary benefit decisions, that authority was self-granted by Prudential alone and is not valid under 29 U.S.C. §1105(c).

### Prudential is a Conflicted Fiduciary

61.     Prudential instructs claims personnel in its training documents that the most important goal is "Increase Profitability.  This goal will be paramount importance as we need to improve our profits and return on equity."  See Exhibit A[1].

---

[1]  Exhibit A herein is an unprotected document that was obtained through PACER.

62.     Prudential instructs claims personnel in its training document that, "Disability is the failure to adapt." A copy of this statement is disclosed on PACER in unprotected documents attached as <u>Exhibit B</u>[2].

63.     Prudential instructs claims personnel in its training documents that Prudential is a claims management company and the goal is to address beneficiaries of Prudential's insurance payments who have "adaptive problems." A copy of this statement is disclosed on PACER in unprotected documents attached as <u>Exhibit C</u>[3].

64.     Prudential permits claims personnel deciding claims to have access to financial reserve information. A copy of a claims screen is disclosed on PACER in unprotected documents attached as <u>Exhibit D</u>[4].

65.     Prudential's goal of profit making perpetually conflicts with its obligation as an ERISA fiduciary to decide claims, such as Ms. Tullie's, based on individual medical conditions and impairments.

66.     Prudential's decision to terminate benefits was the result of Prudential's conflict of interest.

67.     Prudential's decision to deny Plaintiff's appeals was the result of Prudential's conflict of interest.

68.     Pursuant to R.I.G.L. § 27-4-28, Prudential has no discretion under the Plan.

69.     Therefore, the Court's review of Ms. Tullie's claim for long term disability benefits is *de novo*.

70.     Based on the evidence submitted to Prudential or otherwise available to Prudential, establishing that Ms. Tullie has net the Plan condition for entitled to long term disability benefits continuously since January 1, 2015, and that she at all relevant times has continued to meet said

---

[2] Exhibit B herein is an unprotected document that was obtained through PACER.
[3] Exhibit C herein is an unprotected document that was obtained through PACER.
[4] Exhibit D herein is an unprotected document that was obtained through PACER.

conditions, Ms. Tullie is entitled to payment of all long term disability benefits owed to her plus interest on all improperly withheld payments.

## V. Claims for Relief

71.     Plaintiff incorporates the allegations contained in ¶¶1 through 70 above in the counts set forth below.

## Count One
### Benefits Due From Prudential and the Plan under ERISA, 29 U.S.C. §1132(a)(1)(B)

72.     Plaintiff re-alleges and incorporates the preceding paragraphs by reference as if fully set forth herein.

73.     This court must conduct a plenary proceeding in evaluating Prudential's decision to terminate benefits.

74.     The decision to terminate Plan benefits was not supported by substantial evidence, was not reasonable based on the evidence, was wrongful and not in compliance with applicable laws.

75.     As a result of Prudential's refusal and its failure to pay to Plaintiff disability benefits provided to her and to those participants who are disabled, Plaintiff is entitled to relief against Prudential to recover benefits due to her under the terms of the Plan and to enforce her rights to benefits under the Plan and to clarify her rights to future benefits under the Plan pursuant to 29 U.S.C. §1132(a).

76.     If this Court orders retroactive reinstatement of benefits, the Court may enter appropriate relief under ERISA precluding Prudential from utilizing "off sets" against benefits payable to Ms. Tullie, because Prudential materially breached the Plan terms.

77.     Plaintiff is entitled to reinstatement of all other benefits, rights, and privileges as a result of being disabled under the Plan.

**Count Two**
**Breach of Fiduciary duty Under ERISA 29 U.S.C. §1104**

78.     Plaintiff re-alleges and incorporates the preceding paragraphs by reference as if fully set forth herein.

79.     To the detriment of Plaintiff, Prudential failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan.

80.     To the detriment of Plaintiff, Prudential failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**Count Three**
**Declaration of Plaintiff's Rights Under The Plan**
**Declaratory Judgement Act, 28 U.S.C. §2201**

81.     Plaintiff re-alleges and incorporates the preceding paragraphs by reference as if fully set forth herein.

82.     Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgement Act, 28 U.S.C. §2201, and Plaintiff is entitled to a declaratory judgement establishing her rights under the Plan.

83.     Plaintiff seeks a declaration that she was disabled under the terms of the Plan from January 1, 2015 through present, and that she is entitled to benefits for said period.

84.     Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongly withheld from her under the Plan.

## Count Four
### Award of Attorney's Fees and Costs

85.    Plaintiff re-alleges paragraphs 1 through 84 and incorporates the same by reference as if fully set forth herein.

86.    Prudential and the Plan have unlawfully terminated benefits, and have caused Plaintiff to incur attorney's fees and costs and will cause her to incur additional fees and costs. Plaintiff is entitled to recover under 29 U.S.C. §1132(g)(1), costs of this litigation, including reasonable attorney's fees and interest at the Rhode Island statutory on all back due benefits.

## VI. Prayers for Relief

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

a.    In an amount of damages to be determined by this Court, plus pre-judgment interest, post-judgment interest, costs and reasonable attorney's fees allowed by statute or otherwise.

b.    Injunctive relief declaring the rights and duties of the Plaintiff and Defendants with respect to past benefits owed to the Plaintiff, and future benefits to be paid to the Plaintiff, under the Plan, and any other collateral benefit plans.

c.    Declaratory judgment clarifying and establishing Plaintiff's rights under the Plan.

d.    For such other legal or equitable relief as this Court deems just and proper.

PLAINTIFF
By her attorney,
LAW OFFICES OF LOUISE A. HERMAN


_____
Louise A. Herman (#6430)
321 South Main Street, Suite 300
Providence, RI 02903
(401) 277-4110
(401) 453-0073 (fax)
lherman@lhermanlaw.com

Dated:  December 20, 2016